# STATE OF MICHIGAN

# COURT OF APPEALS

BEARING360 LLC,

      Plaintiff/Counter-Defendant-
      Appellee,

v

LARRY CAMERON,

      Defendant,

and

BRAD THOR,

      Defendant/Counter-Plaintiff-
      Appellant,

and

STRATEGIS SYSTEMS LLC and THOR
ENTERTAINMENT GROUP, LLC,

      Defendant-Appellants.

UNPUBLISHED
August 31, 2017

No. 330812
Emmet Circuit Court
LC No. 14-104498-CZ

Before: MARKEY, P.J., and RONAYNE KRAUSE and BOONSTRA, JJ.

PER CURIAM.

Defendants appeal by right the trial court's opinion and order denying their post-judgment motion for sanctions. We affirm.

## I. BACKGROUND

This civil action arises from an acrimonious relationship between Barrett H. Moore and his former friend and client, defendant Brad Thor. Moore's company, plaintiff Bearing360 LLC, provided consulting services (referred to as "life continuity" services) to high net worth individuals to assist them in preparing for possible catastrophic events, such as natural disasters, war and terrorism, that might disrupt the product supply chain. Thor became an investor in

-1-

plaintiff and other entities related to Moore. After the relationship between Moore and Thor soured and ended, plaintiff brought suit against Thor and his companies, defendants Strategis Systems, LLC and Thor Entertainment Group, LLC (TEG), as well as defendants Larry Cameron and Rodney Cox.[1] The complaint contained five counts: Misappropriation of Trade Secrets, Civil Conspiracy, Conversion, Tortious Interference, and Defamation. Plaintiff alleged in part that defendants had worked together to steal plaintiff's confidential information and trade secrets related to life continuity and risk management, that Cox had abruptly discontinued his services for plaintiff after taking "his laptop, cellular phone, [and] work product," and after having "downloaded onto his computer" plaintiff's "propriety data/trade secrets," and that defendants were constructing a safe haven facility using plaintiff's confidential information and trade secrets.

Defendants moved for summary disposition. Plaintiff amended its complaint twice, adding factual allegations, removing the claims for tortious interference and defamation, and adding other claims. After plaintiff removed the tortious interference and defamation claims, defendants filed a February 5, 2015 Motion for Relief Pursuant to MCR 2.114(E) and (F), and MCR 2.625(A) (motion for sanctions), asserting that plaintiff had failed to make a reasonable inquiry into whether those claims were well grounded in fact and that it lacked a good faith basis for asserting them. Ultimately, the trial court denied the motion for sanctions, "[b]ased on the competing documents presented by both sides," and denied defendants' motion for summary disposition on plaintiff's claims for misappropriation of trade secrets, conversion, and civil conspiracy.

Defendants thereafter sought discovery regarding plaintiff's alleged trade secrets. Defendants filed multiple motions to compel or dismiss. Plaintiff, however, repeatedly refused to produce the requested documents, even after the court ordered it to "provide full and complete responses by" a certain date.

The parties negotiated a proposed stipulated protective order and presented to the court, for its resolution, defendants' objection to the last two sentences of paragraph 14, as indicated in strikethrough text:

> 14. In the event any party intends to utilize documents or information subject hereto at any hearing or at trial in this action, that party shall notify counsel who has asserted confidentiality with respect to such materials of such intention, with specificity, at least ten (10) days in advance of the hearing or trial. Said documents are to be marked Confidential and the hearing, or portion of the trial, involving the documents or information shall be conducted "in camera", and spectators shall be barred from the courtroom. ~~Further, at trial if the validity of Bearing360, LLC's Trade Secrets are at issue, that question shall be resolved by the Court "in camera", out of the presence of the Jury, and the Court shall advice~~

---

[1] Cameron and Cox worked as independent contractors on behalf of plaintiff. Plaintiff alleged that Thor had pressured him to engage Cox in that capacity. Plaintiff was unable to serve Cox with process, and the clerk therefore entered an order dismissing him from the case.

~~the Jury as to the validity or invalidity of Bearing360, LLC's Trade Secrets. This is to avoid Bearing360 LLC's Trade Secrets becoming public on the record or to the jury.~~

Relying on secondary authority, and in light of section 6[2] of the Michigan Uniform Trade Secrets Act (MUTSA), MCL 445.1901, *et seq.*, plaintiff argued that the protection of its trade secrets through trial was necessary because once "documents find their way to the public record, they are no longer trade secrets." Plaintiff contended that no guarantee of protection existed if the jury would be allowed to consider the trade secrets and that the court had the authority to review the documents in camera. Defendants asserted that it was premature to extend such trial-related protections in a discovery order and that plaintiff's request that the jury never view the documents would preclude a jury trial on the critical issue of whether trade secrets existed. They also alleged that plaintiff had not identified the specific nature of the trade secrets, but rather, had only given a broad description. The trial court concluded that "Plaintiff's complaint [did] allege the specific nature of the trade secrets, i.e., 'research data, formulas, calculations, and processes' dealing with plaintiff's business of providing advice to individuals and corporations about how to mitigate their risks from the occurrence of supply chain disruptions, etc. To the extent that Defendants assert that the pleading requirements require pleading of the actual secret information that constitutes the alleged trade secret, [they are] clearly incorrect." However, the trial court also rejected plaintiff's position, stating:

> With respect to the language in paragraph 14, specifically the last two sentences of paragraph 14, *the Court finds that language to be unnecessary in a confidentiality order pertaining to discovery*. The Court will note for this record that Plaintiff has expressed and continues to express that there are trade secrets that are not to be disclosed, and that Plaintiff is even maintaining that notwithstanding a jury trial demand presented by Plaintiff that somehow the trial should be conducted without the jury viewing these trade secret materials. *That is an issue that the Court will hear and decide if an appropriate motion is made, and there is support for that.* [Emphasis added.]

After entry of the stipulated protective order, as modified by the court, plaintiff remained steadfast in its refusal to produce the information based on concerns that the trade secrets would not be protected at trial. The trial court entered an order compelling production of the documents, but on the date the responses were due plaintiff moved for reconsideration of that order, again arguing that the failure to provide protection for the trade secrets at trial provided plaintiff with no sense of security. The trial court denied reconsideration and entered another order granting defendants' motion to compel or to dismiss, holding that plaintiff's complaint would be dismissed with prejudice if plaintiff did not, within seven days, fully comply with all outstanding discovery requests. Ultimately, plaintiff's failure to produce discovery disclosing its alleged trade secrets as required by MCL 445.1906 resulted in the dismissal of plaintiff's

---

[2] MCL 445.1906.

complaint. Thus, despite 15 months of litigation, this matter never made it past the discovery stage.

Thereafter, defendants filed a post-judgment motion for sanctions under MCR 2.114, MCR 2.625, MCL 600.2591, and MCL 445.1905, asserting that plaintiff had filed a frivolous complaint, had not made a reasonable inquiry into the existence of trade secrets, and had therefore acted in bad faith in filing suit. The trial court denied the motion.

## II. STANDARD OF REVIEW

We review for clear error a trial court's determination regarding whether to impose sanctions for failure to make a reasonable inquiry under MCR 2.114 and whether a claim was frivolous under MCR 2.625 and MCL 600.2591. *Guerrero v Smith*, 280 Mich App 647, 677; 761 NW2d 723 (2008); *Ladd v Motor City Plastics Co*, 303 Mich App 83, 103; 842 NW2d 388 (2013). "A decision is clearly erroneous where, although there is evidence to support it, the reviewing court is left with a definite and firm conviction that a mistake has been made." *1300 LaFayette E Coop, Inc v Savoy*, 284 Mich App 522, 534; 773 NW2d 57 (2009). Under the clear-error standard, "a reviewing court should not substitute its judgment on questions of fact unless the factual determination clearly preponderates in the opposite direction." *In re COH*, 495 Mich 184, 204; 848 NW2d 107 (2014).

## III. APPLICABLE LAW

Sanctions are mandatory under MCR 2.114 and MCR 2.625 if a court finds that a violation of those provisions has occurred. *Guerrero*, 280 Mich App at 678; MCR 2.625(2). MCR 2.114 provides in relevant part:

(D) Effect of Signature. The signature of an attorney or party, whether or not the party is represented by an attorney, constitutes a certification by the signer that

(1) he or she has read the document;

(2) to the best of his or her knowledge, information, and belief *formed after reasonable inquiry*, the document is well grounded in fact and is warranted by existing law or a good faith argument for the extension, modification, or reversal of existing law; and

(3) the document *is not interposed for any improper purpose*, such as to harass or to cause unnecessary delay or needless increase in the cost of litigation.

(E) Sanctions for Violation. If a document is signed in violation of this rule, the court, on the motion of a party or on its own initiative, *shall* impose upon the person who signed it, a represented party, or both, an appropriate sanction, which may include an order to pay to the other party or parties the amount of the reasonable expenses incurred because of the filing of the document, including reasonable attorney fees. The court may not assess punitive damages.

(F) Sanctions for Frivolous Claims and Defenses. In addition to sanctions under this rule, a party pleading a frivolous claim or defense is subject to costs as provided in MCR 2.625(A)(2). The court may not assess punitive damages. [Emphasis added.]

MCR 2.625(A)(2), which MCR 2.114 cross-references, provides that "if the court finds on motion of a party that an action or defense was frivolous, costs shall be awarded as provided by MCL 600.2591." (Emphasis added). In turn, MCL 600.2591(1) entitles a party to recover attorney fees and costs for a frivolous action:

Upon motion of any party, if a court finds that a civil action or defense to a civil action was frivolous, the court that conducts the civil action shall award to the prevailing party the costs and fees incurred by that party in connection with the civil action by assessing the costs and fees against the nonprevailing party and their attorney.

Under MCL 600.2591(3)(a), a claim is frivolous if any of the following conditions are satisfied:

(*i*) The party's primary purpose in initiating the action or asserting the defense was to harass, embarrass, or injure the prevailing party.

(*ii*) The party had no reasonable basis to believe that the facts underlying that party's legal position were in fact true.

(*iii*) The party's legal position was devoid of arguable legal merit.

Under these provisions, "[a]n attorney has an affirmative duty to conduct a reasonable inquiry into the factual and legal viability of a pleading before it is signed." *LaRose Mkt v Sylvan Ctr*, 209 Mich App 201, 210; 530 NW2d 505 (1995). "The reasonableness of the inquiry is determined by an objective standard." *AG v Harkins*, 257 Mich App 564, 576; 669 NW2d 296 (2003). Further,

[t]he focus is on the efforts taken to investigate a claim before filing suit, and a determination of reasonable inquiry depends on the facts and circumstances of the case. *Id*. The attorney's subjective good faith is irrelevant. *Lloyd v Avadenka*, 158 Mich App 623, 630; 405 NW2d 141 (1987). That the alleged facts are later discovered to be untrue does not invalidate a prior reasonable inquiry. *Lockhart v Lockhart*, 149 Mich App 10, 14-15; 385 NW2d 709 (1986). [*Harkins*, 257 Mich App at 576.]

## IV. FEBRUARY 5, 2015 MOTION FOR SANCTIONS

Defendants first argue that the trial court erred by denying their February 5, 2015 motion for sanctions (relating to defendants' claim that plaintiff's tortious interference and defamation claims were frivolous). We disagree.

By filing its second amended complaint early on in this litigation, plaintiff effectively withdrew the tortious interference and defamation claims that it had earlier pled, and thus

narrowed the triable issues in the case. In granting leave for plaintiff to file the second amended complaint, the trial court expressly did not make any determination at that time regarding whether the earlier filing of the withdrawn claims violated MCR 2.114. But the withdrawal of the claims does not itself equate to an acknowledgement that those claims were filed in violation of MCR 2.114, and we should not in any event discourage a voluntary narrowing of the issues.

Defendants later filed the February 5, 2015 motion, thereby putting the issue once again front and center, and the trial court held a hearing on the motion. At the hearing, plaintiff's counsel represented that the two counts were withdrawn "because we didn't want to incur the time and energy and expense of pursuing that when we had more important matters to pursue, trade secret and theft of confidential information and conspiracy, so we dropped those and proceeded with others." After entertaining arguments from counsel and considering the written materials that the parties had submitted, and having lived with this litigation over many months, presided over numerous motion hearings, and being intimately familiar with the case, the parties, their counsel, and counsel's endless acrimony, the trial court denied the motion, ruling as follows:

> In this case we have a complaint that was filed by the Plaintiff that contained two counts which the Defendants objected to. I believe the Defendants brought their initial summary disposition motion without any dialog[ue] with Plaintiff's Counsel about any complaints or concerns they had regarding the viability of those claims. In any event, before the necessity to hear and decide a motion for summary disposition, the Plaintiff withdrew those counts, of course over the objection of Defendants, his primary interest seemed to be in pursuing sanctions with respect to those counts.
>
> Based on the competing documents presented by both sides, this Court can't on this record make a finding that they are such to authorize the imposition of sanctions under 2.114, and therefore the motion is denied.

Although sanctions are mandatory where the trial court finds that a document was signed in violation of MCR 2.114, it is for the trial court to determine in the first instance whether such a violation has occurred. That determination is subject to review for clear error. *Ladd v Motor City Plastics Co*, 303 Mich App 83, 103; 842 NW2d 388 (2013).

We discern no clear error in the trial court's determination. The trial court was in the best position to evaluate the facts and circumstances before it, and to ascertain whether there had been a violation of MCR 2.114. Although MCR 2.114 obligates attorneys to make "reasonable inquiry" before signing any document in court proceedings, we are aware of no authority establishing that an attorney must independently verify all factual allegations before filing a complaint. We therefore affirm the trial court's denial of defendants' February 5, 2015 motion for sanctions.

## V. POST-JUDGMENT MOTION FOR SANCTIONS

Defendants further argue that the trial court erred by denying their post-judgment motion for sanctions because (1) plaintiff's counsel failed to make a reasonable inquiry into whether any trade secrets existed, (2) plaintiff relied on a position devoid of any legal merit, and (3) the circumstances demonstrate that plaintiff's claim was made for the improper purpose of harassing defendants.

In its opinion and order denying defendants' request for post-judgment sanctions, the trial court found that defendants had not "shown conduct so egregious as to warrant imposition of the sanctions sought." First, the court found that defendants had failed to produce any direct evidence of an "improper purpose." In this regard, the trial court rejected defendants' argument that the delay between the alleged theft and the date the suit was filed, as well as plaintiff's inclusion of defendants Strategis and TEG in the lawsuit, evinced an improper motive. The court reasoned that plaintiff had presented a plausible explanation for the timing of the suit and the inclusion of Thor's companies, and that the latter did not increase litigation expenses. Next, the court found that defendants had failed to prove that plaintiff's claims were frivolous. The trial court acknowledged that plaintiff's counsel had admitted that he had not "looked" at the trade secret documents. However, the court did not view this statement as discrediting counsel's other means of investigation—including touring plaintiff's safe haven facility and both discussing and reviewing the trade secrets licensed to plaintiff—which the trial court viewed as sufficient to satisfy counsel's duty of making a reasonable inquiry.

### A. REASONABLE INQUIRY INTO TRADE SECRETS

In response to defendants' post-judgment motion for sanctions, plaintiff's counsel averred in his affidavit that he had reviewed the trade secrets before filing the complaint, stating in part:

> At the onset of this litigation, I spent multiple hours discussing and *reviewing the broad subject matter concerning this litigation*, *including the body of intellectual property*, *to include trade secrets*, licensed to Bearing360 LLC. I also visited the facility operating in Northern Michigan. I toured the facility and became familiarized with many of the unique aspects of the facility and how it protects individuals from supply chain disruption. [Emphasis added.]

Based on counsel's affidavit, we cannot conclude that the trial court clearly erred by concluding that counsel had made a reasonable inquiry into the existence of trade secrets before filing the complaint.[3]

---

[3] Defendants' argument with respect to whether a reasonable inquiry was made, both before this Court and the trial court, focuses on whether an inquiry was made into the existence of trade secrets (because proving plaintiff's claims for misappropriation of trade secrets, conversion, and civil conspiracy requires the existence of such secrets). To the extent that defendants suggest,

On appeal, defendants point out that no trade secrets were ever produced and that plaintiff's attorney, at one point during the litigation, stated that he had not reviewed the trade secret documents. With reference to counsel's affidavit, defendants contend that counsel blindly relied on Moore and merely toured a facility where he was shown reams of documents. A closer reading of the affidavit reveals, however, that counsel did review the trade secrets and that defendants have simply not characterized counsel's statements accurately. Further, while we acknowledge that a conflict exists between counsel's statement at a motion hearing—that he had not reviewed the trade secret documents—and his affidavit, the trial court was in the best position to judge counsel's credibility, and we will not displace the trial court's judgment absent evidence that preponderates in the opposite direction. See *In re Noecker*, 472 Mich 1, 9-10; 691 NW2d 440 (2005) (the trier of fact is in the best position to judge a witness's credibility). Accordingly, based on the present record, we lack the definite and firm conviction necessary to conclude that the trial court clearly erred by finding that counsel made a reasonable inquiry.

## B.  POSITION DEVOID OF LEGAL MERIT

Throughout discovery, it was plaintiff's position that section 6 of the MUTSA should be interpreted to require trial protections of trade secrets from the outset of discovery and function to preclude review of such secrets by a jury, even when a jury trial is requested. On appeal, defendants assert that the trial court erred by denying sanctions because this position is devoid of legal merit, as the trial court recognized in the proceedings below.

Section 6 of the MUTSA provides:

> In an action under this act, a court shall preserve the secrecy of an alleged trade secret by reasonable means, which may include granting protective orders in connection with discovery proceedings, holding in camera hearings, sealing the records of the action, and ordering any person involved in the litigation not to disclose an alleged trade secret without prior court approval. [MCL 445.1906.]

No Michigan court has construed the meaning of this provision, but its language is straightforward: Section 6 requires a trial court to "preserve the secrecy of an alleged trade secret by reasonable means," which may be accomplished by any of the non-exhaustive ways enumerated in the statute. The parties, however, disagreed over the meaning of what measures of protection would be "reasonable" in a discovery order. The trial court sided with defendants, concluding that the inclusion in a discovery order of protections applicable at trial would be premature.

That the trial court rejected plaintiff's view of the statute, reasoning that it would address the issue again before trial, does not render plaintiff's argument totally devoid of legal merit. Plaintiff presented a legitimate argument, indirectly supported by secondary authority and the statute, that the protective order did not comply with section 6 of the MUTSA because the statute

---

for the first time on appeal, that plaintiff did not investigate the other elements of its claims, e.g., that its counsel failed to investigate the involvement of the defendant LLCs, this argument is not preserved and is waived. See *Walters v Nadell*, 481 Mich 377, 387-388; 751 NW2d 431 (2008).

provides for in camera review, and the revelation of trade secrets to a jury would make the information lose its secret character. See *Thomas Indus v C & L Elec*, 216 Mich App 603, 610-611; 550 NW2d 558 (1996) (a claim is not devoid of legal merit if it is feasible). Therefore, plaintiff's argument was not without arguable legal merit and was sufficient to avoid a finding of frivolousness. More significantly, and although plaintiff's position did not prevail, it was advanced under circumstances in which the law is undeveloped and unclear, and a state of ambiguity does not warrant the imposition of sanctions. See *Harkins*, 257 Mich App at 669; *Kitchen v Kitchen*, 465 Mich 654, 662; 641 NW2d 245 (2002) (declining an award of sanctions where the law was unclear). Accordingly, we have no definite and firm conviction that the trial court erred by concluding that plaintiff's position was not devoid of legal merit.

## C. IMPROPER PURPOSE

Finally, as defendants recognize, the record contains no direct evidence that plaintiff commenced this suit for an improper purpose of harassing, embarrassing, or increasing plaintiff's litigation costs. While plaintiff's counsel was dilatory in some of his filings, the record indicates that plaintiff was genuinely concerned about the alleged theft of trade secrets and of any possibility (reasonable or not) that they could be "leaked" during litigation. Defendants nonetheless contend that the circumstances of this case, taken together, reveal an intent to harass and that the trial court, therefore, erred by denying sanctions.

Defendants suggest that certain circumstances support their position that plaintiff initiated this litigation to harass defendants, including that (a) plaintiff waited nearly a year to file suit after the alleged theft of the property; (b) defendant LLCs were named as defendants although no evidence supported their inclusion; (c) plaintiff vacated its facility allegedly to thwart discovery; and (d) plaintiff listed Thor's children on its witness list.[4] None of these facts, however, alone or together, give rise to a reasonable inference of improper motivation. As the trial court noted, other reasonable explanations exist on the record for these occurrences.[5] In other words, it was equally plausible under the factual circumstances presented that plaintiff's initiation of the suit was properly motivated. Speculative and conjectural musings are insufficient evidence to support a finding of improper purpose. See *Skinner v Square D Co*, 445 Mich 153, 164; 516 NW2d 475 (1994) (describing conjectural evidence as that which is subject to more than one

---

[4] To the extent that defendants raise other circumstances not raised in the trial court to support their position that plaintiff initiated this suit for an improper purpose, those claims are not properly before the Court and we deem them waived. See *Walters*, 481 Mich at 387-388.

[5] For example, Moore explained in his affidavit that plaintiff did not immediately file suit upon discovering the alleged theft of property because he first attempted to retrieve the property from Thor and did not discover the conspiracy until approximately nine months after the theft occurred. Further, the lease on plaintiff's facility had allegedly ended during the pendency of the litigation and plaintiff had moved its contents into storage. Plaintiff allegedly believed that the LLCs were involved in the conspiracy due to their relation to defendant. And Thor's children appear to have been included on the witness list inadvertently, when counsel used a list from another lawsuit between the parties.

equally plausible explanation). Finally, even if some of these events could be viewed as supporting an improper purpose, this evidence, in light of evidence to the contrary, did not so clearly preponderate in the opposite direction as to warrant displacing the trial court's judgment. *In re COH*, 495 Mich at 204. The trial court did not clearly err by finding that plaintiff did not initiate this suit for an improper purpose.

Affirmed. As the prevailing party, plaintiff may tax costs. MCR 7.219(A).

/s/ Jane E. Markey
/s/ Amy Ronayne Krause
/s/ Mark T. Boonstra